UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| KATHIE HARRINGTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:10 CV00019 LMB |
| BOOTHEEL COUNSELING SERVICES, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court upon plaintiff's Complaint alleging employment discrimination by defendant based upon race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 et seq. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court is Defendant Bootheel Counseling Services, Inc.'s unopposed Motion for Summary Judgment. (Doc. No. 34). Despite being granted an extension of time to do so (Doc. No. 38), plaintiff has failed to file a Response to defendant's Motion for Summary Judgment.

## Factual Background[1]

Plaintiff is an African-American woman, who was employed by Defendant Bootheel Counseling Services, Inc., as a Psychiatric Rehabilitation Social Worker ("PSR Worker") from March 17, 2003, until December 8, 2008. Defendant is a non-profit organization that provides mental health, substance abuse, and healthcare services in four counties located in southeastern Missouri. As part of her duties as a PSR Worker, plaintiff transported adults with mental disabilities from their homes to Bootheel Counseling Services' clubhouse where they learned daily living skills. Plaintiff then transported the individuals back to their homes.

At the time plaintiff began her employment, she received and read the employment policies of defendant, including sections on failing to report to work and reporting an absence to a supervisor. Defendant's policies provide for termination in the event an employee fails to report to work or call in for three or more consecutive work days.

Plaintiff's immediate supervisor in late 2008 was Michelle Glaus, who was the PSR Coordinator. During the later part of 2008, there were two other PSR Workers employed by defendant in addition to Ms. Glaus, who as the PSR Coordinator had supervisory and PSR Worker duties. The other two PSR Workers, Cindy Floyd and Nancy Jones, and Michelle Glaus were Caucasian. David Terrell, the Community Psychiatric Rehabilitation Program Director, was Ms. Glaus' immediate supervisor in late 2008. Mr. Terrell's immediate supervisor in late 2008 was Cheryl Jones, the Executive Director of Bootheel Counseling Services.

Plaintiff did not report for work on Tuesday, November 25, 2008 or Wednesday,

---

[1]The court's recitation of the facts is taken from plaintiff's Complaint and defendant's Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment. (Doc. No. 36).

November 26, 2008. Bootheel Counseling Services was closed on Thursday, November 27, 2008 and Friday, November 28, 2008 for the Thanksgiving holiday, and plaintiff was not scheduled to work on those dates. Plaintiff telephoned Ms. Glaus during the week of November 24, 2008, and informed her that she was ill and would be absent from work the rest of the week. Plaintiff saw a doctor on Tuesday, November 25, 2008, who diagnosed her with high blood pressure and bronchitis, and prescribed medications. The doctor also provided plaintiff with a note excusing her from work from Tuesday, November 25, 2008, until Sunday, November 30, 2008, and stating that she was able to return to work on Monday, December 1, 2008. Plaintiff dropped this doctor's note off at the main offices for Bootheel Counseling Services on Tuesday, November 25, 2008. Defendant's Human Resources Director, Kathy Teachout, found the doctor's note in her work mailbox. Ms. Teachout telephoned Ms. Glaus during the week of November 24, 2008, and informed her that she had received the doctor's note excusing plaintiff from work until Monday, December 1, 2008. Ms. Glaus understood that plaintiff was to return to work on Monday, December 1, 2008.

Plaintiff's teenage son telephoned Ms. Glaus on Monday, December 1, 2008, and informed Ms. Glaus that plaintiff would not be coming to work on that date. On Tuesday, December 2, 2008, plaintiff telephoned and left a voicemail message for Ms. Glaus that she would not be coming to work that day. Plaintiff and Ms. Glaus spoke on the telephone later in the day on Tuesday, December 2, 2008, at which time it was discussed that plaintiff would need to supply a doctor's note for any absence the week of December 1, 2008. During this conversation, plaintiff informed Ms. Glaus that she had another doctor's appointment. Plaintiff, in fact, did not have a doctor's appointment scheduled when she spoke with Ms. Glaus. Ms. Glaus instructed

plaintiff to telephone her back after plaintiff saw the doctor to discuss the rest of the week, and plaintiff agreed to do so.

Plaintiff and Ms. Glaus did not talk further on Tuesday, December 2, 2008. Plaintiff did not report to work on Wednesday, December 3, 2008, Thursday, December 4, 2008, or Friday, December 5, 2008, and did not contact Ms. Glaus or anyone else with Bootheel Counseling Services to report her absence. During the week of December 1, 2008, plaintiff did not provide a second doctor's note to anyone with Bootheel Counseling Services excusing her from work for that week. On Friday, December 5, 2008, late in the day, Ms. Glaus, Ms. Teachout, Mr. Terrell, and Ms. Jones had a meeting about plaintiff's absences and failure to contact her supervisor about the absences. During this meeting, it was decided plaintiff would be terminated for her failure to follow company policy on reporting an absence, therefore, having three consecutive unexcused absences; and her failure to follow the instructions of her supervisor to telephone her back.

On Monday, December 8, 2008, Ms. Glaus telephoned plaintiff at her home before she would have left for work and instructed her to appear for a meeting at the main offices. Plaintiff, Ms. Glaus, Mr. Terrell, Ms. Teachout, and Ms. Jones informed plaintiff at this meeting that her employment with Bootheel Counseling Services was terminated. Plaintiff was provided with a Termination Notice stating she was terminated for failure to follow instructions and unexcused absences. Plaintiff refused to sign the Termination Notice. Plaintiff was replaced with an individual who was already employed with Bootheel Counseling Services in another capacity, Elizabeth Bryant.

Plaintiff alleges in her Complaint that defendant discriminated against her on the basis of race in that it has failed to discharge similarly-situated white employees who committed similar

offenses, and has paid plaintiff less than similarly-situated employees.

**Discussion**

Defendant argues that plaintiff cannot establish a prima facie case to support her claim for racial discrimination because there is no evidence which would give rise to an inference of unlawful discrimination. Defendant also claims that Bootheel Counseling Services has proffered a legitimate, non-discriminatory reason for terminating plaintiff's employment, and that there is no evidence to suggest that Bootheel Counseling Services' reason is a pretext for unlawful discrimination. As previously noted, plaintiff has failed to respond to defendant's motion.

**A.    Summary Judgment Standard**

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the nonmovant may not rely on mere denials or bare

allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249. The nonmovant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Even if a motion for summary judgment is unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law. Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993).

**B.    Plaintiff's Claims of Discrimination**

Plaintiff claims that she was terminated because of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the MHRA, Mo. Rev. Stat. § 213.010 et seq. To survive a motion for summary judgment in Title VII race discrimination cases, a plaintiff must establish a genuine issue of material fact regarding the issue of intentional discrimination. A plaintiff may demonstrate discrimination by either direct or indirect evidence. See Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995). Cases premised on indirect evidence are analyzed under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See id. at 251. Courts apply the same analysis to claims of discrimination brought under Title VII and 42 U.S.C. § 1981. See Saulsberry v. St. Mary's Univ. of Minnesota, 318 F.3d 862, 866 (8th Cir. 2003) (citations omitted) (stating that the elements and analysis of Title VII and § 1981 claims are the same).

The court looks to Missouri law in resolving plaintiff's claim under the MHRA. Under the MHRA, an employer is prohibited from discharging or otherwise discriminating against an individual based on, among other things, race and age. Mo.Rev.Stat. § 213.055. The MHRA defines "discrimination" as "any unfair treatment based on [race, . . . ], age as it relates to

employment" Mo.Rev.Stat. § 213.010(5). In Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 820- 21 (Mo.2007) (en banc ), the Missouri Supreme Court held that a discrimination claim survives summary judgment "if there is a genuine issue of material fact as to whether [race and/or age] was a 'contributing factor' in [defendant's] termination decision." Id. at 820.

### Plaintiff's Claims Under Title VII and 42 U.S.C. § 1981

Plaintiff has submitted no evidence of direct discrimination. As such, her claims of discrimination will be analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998). Under this analysis, the plaintiff has the initial burden of proving a prima facie case of discrimination. See id. If the plaintiff succeeds in establishing a prima facie case, a rebuttable presumption of discrimination arises. See id. The burden then shifts to the employer who is required to articulate a legitimate nondiscriminatory reason for the adverse employment action. See id. If the employer articulates such a reason, the presumption of discrimination disappears completely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory intention. See id. However, "[a]t all times, the plaintiff retains the ultimate burden of proving that he or she was illegally discriminated against on the basis of his or her [race]." Id. at 1107-1108.

   1. **Prima Facie Case**

To establish a prima facie case for race discrimination, plaintiff must show: (1) she was a member of a protected group, (2) she was meeting the legitimate expectations of her employer, (3) she suffered an adverse employment action, and (4) there are facts that permit an inference of

discrimination.  Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005); Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 478 (8th Cir. 2004).  In this case, there is no dispute that plaintiff, an African-American woman, is a member of a protected group.  It is also undisputed that plaintiff suffered an adverse employment action when her employment was terminated.

Defendant argues that plaintiff cannot establish a prima facie case of race discrimination because she cannot show that she was discharged under circumstances giving rise to an inference of race discrimination.  Defendant contends that plaintiff failed to identify similarly situated employees who were treated differently.

Plaintiff bears the burden of producing specific, tangible evidence showing a disparity in the treatment of similarly situated employees.  Philip v. Ford Motor Co., 413 F.3d 766, 768 (8th Cir. 2005).  At the prima facie stage of the McDonnell Douglas burden-shifting framework, the Eighth Circuit applies the "low-threshold standard for determining whether employees are similarly situated."  Rodgers v. U.S. Bank, NA, 417 F.3d 845, 852 (8th Cir. 2005) (abrogated on other grounds).  Under this standard, the plaintiff must show that she and other employees were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." Id. (quoting Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir. 2004)).

Plaintiff has failed to meet such a burden.  Plaintiff alleges in her Complaint that defendant failed to discharge similarly situated white employees who committed similar offenses.  In her Answers to Interrogatories, plaintiff claims "Jennifer Steward, Cindy Floyd, and another white employee were not terminated when they called in sick."  (Def's Ex. 9, No. 15).  Plaintiff subsequently claimed in her deposition that Cheri Chapman was also treated differently because she was admitted to a hospital during her employment with defendant and, upon her release, she

continued to work for defendant. (Def's Ex. 2, p. 71-72).

First, of the individuals named by plaintiff, Ms. Floyd is the only employee who held the same position as plaintiff. In addition, none of these individuals engaged in the same conduct as plaintiff. Plaintiff admits that these individuals followed defendant's policy and "called in sick." (Def's Ex. 9, No. 15). Plaintiff did not call her supervisor or anyone else at Bootheel Counseling Services to report her absences December 3, 2008 through December 5, 2008. Further, plaintiff has not alleged that any of these employees failed to follow their supervisor's instructions. As such, plaintiff is unable to demonstrate that defendant failed to discharge similarly situated white employees who committed similar offenses.

Plaintiff also alleges in her Answers to Interrogatories that Cindy Floyd, Nancy Jones, Nicole Lowman, and the individual who replaced plaintiff were all paid more than she was. (Def's Ex. 9, No. 15). Defendant contends that the number of years an employee has been employed with defendant, the employee's experience, and the employee's qualifications are all factors in determining an employee's pay at Bootheel Counseling Services. (Doc. No. 35, p. 6). Defendant states that the employees named by plaintiff were all employed with Bootheel Counseling Series longer than she was and/or had different experience and qualification levels than she did, which accounts for any difference in pay. (Id.). Plaintiff has failed to demonstrate that the named employees were similarly situated to her in terms of years of service, experience, and qualifications. As such, the court finds that plaintiff has failed to raised an inference of discrimination to satisfy the fourth element of her race discrimination claim.

### 2. Pretext

Even were the court to conclude that plaintiff met her burden of establishing a prima facie case, defendant would still be entitled to summary judgment. To rebut the presumption created when the plaintiff meets the requirements of the prima facie case, a defendant in an employment discrimination case must articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. Rose-Maston, 133 F.3d at 1108. Regarding this second step of the McDonnell Douglas burden shifting analysis, defendant has articulated a legitimate nondiscriminatory reason for its decision to terminate plaintiff's employment. The offered justification for the termination decision is that plaintiff had three consecutive unexcused absences, and failed to follow instructions from her supervisor, in violation of defendant's policies. Plaintiff admits that she was absent from work three consecutive days-Wednesday, December 3, 2008 through Friday, December 5, 2008-and that she never called anyone with Bootheel Counseling Services on these days despite being directed to by her supervisor. Accordingly, the court finds that defendant has articulated a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment.

Because defendant has produced a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment, the burden shifts back to plaintiff to demonstrate pretext. To demonstrate a material question of fact regarding pretext, "[a] plaintiff may show that the employer's explanation is 'unworthy of credence...because it has no basis in fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir. 2011). "Alternatively a plaintiff may show pretext 'by persuading the court that a [prohibited] reason, rather than the employer's stated reason, actually motivated the employer's action." Id. "At the pretext stage of the McDonnell

Douglas burden-shifting framework, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." Rodgers, 417 F.3d at 853. A plaintiff "must show that she and the employees outside of her protected group were similarly situated in all relevant respects." Id.

Here, plaintiff makes no such showing on the issue of pretext. As previously discussed, plaintiff is unable to demonstrate that similarly situated employees were treated differently to satisfy the lesser burden to meet her prima facie case. The court finds that the evidence is insufficient for a reasonable trier of fact to find that race motivated defendant's decision to terminate plaintiff. Thus, even were plaintiff able to make a prima facie case, she has failed to rebut defendant's legitimate, nondiscriminatory reason for terminating plaintiff's employment. Accordingly, summary judgment will be entered in favor of defendant on plaintiff's claims under Title VII and 42 U.S.C. § 1981.

**Plaintiff's Claims Under the MHRA**

As previously stated, plaintiff's MHRA discrimination claim survives summary judgment "if there is a genuine issue of material fact as to whether [race] was a 'contributing factor' in [defendant's] termination decision." Daugherty, 231 S.W.3d at 820. "A 'contributing' factor has been defined as one 'that contributed a share in anything or has a part in producing the effect.'" Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 867 (Mo. Ct. App. 2009). The court must determine "whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." Daugherty, 231 S.W.3d at 820.

The undersigned finds that plaintiff has failed to present any evidence that her race was a

"contributing factor" in defendant's termination decision. As discussed above, the undisputed facts reveal that plaintiff was terminated as a result of her three unexcused absences and her failure to follow the instructions from her supervisor. Plaintiff has failed to demonstrate that similarly situated employees were treated differently, and has offered no evidence that shows her termination was a pretext for intentional discrimination.

Accordingly, summary judgment will be entered in favor of defendant on plaintiff's claims under the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment (Doc. No. 34) be and it is **granted.** A separate Summary Judgment will be entered on this date.

Dated this  6th  day of April, 2012.

*/s/ Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE